PER CURIAM.
The Attorney General of Florida has petitioned this Court for an advisory opinion as to the validity of a proposed citizen initiative amendment to the Florida Constitution titled “Rights of Electricity Consumers Regarding Solar Energy Choice” and the corresponding Financial Impact Statement submitted by the Financial Impact Estimating Conference. Consumers for Smart Solar, Inc., (the “sponsor”), submitted the proposed amendment under article XI, section 3 of the Florida Constitution. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const.
This Court’s review of the proposed amendment is limited to three issues. First, we must determine whether the proposed amendment satisfies the single-subject requirement of article XI, section 3 of the Florida Constitution. Second, we must determine whether the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (2015). And third, this Court must determine whether the Financial Impact Statement complies with the requirements of section 100.371(5),' Florida Statutes (2015). See § 101.161(1), Fla. Stat. (2015).
For the reasons that follow, we conclude that the proposed amendment embraces a single subject and matter directly connected therewith, and therefore complies with article XI, section 3 of the Florida Constitution. We also conclude that the ballot title and summary -comply with section 101.161(1) because they are not clearly and conclusively defective. Finally, we conclude that the accompanying Financial Impact Statement complies with the requirements of section 100.371(5), Florida Statutes (2015). Accordingly, we approve the proposed amendment and Financial Impact Statement for placement on the ballot.
I. BACKGROUND
On November 24, 2015, the Attorney General petitioned this Court for an opinion as to the validity of an initiative petition sponsored by Consumers for Smart Solar, Inc., and circulated under article XI, section 3 of the Florida Constitution. On December 21, 2015, this Court issued an order permitting interested parties to file briefs on the proposed amendment. The sponsor submitted a brief supporting the *826 validity of the initiative petition, as did the Florida Electric Cooperatives Association, Inc., and the 60 Plus Association. Duke Energy Florida, Florida Power and Light Co., Gulf Power Co., and Tampa Electric Co. jointly filed a brief.in support of the initiative. Floridians for Solar Choice, Inc., submitted a brief, in opposition, as did the Florida Solar Energy Industries Association. Progress Florida, Inc., Environment Florida, Inc., and the Environmental Confederation of Southwest Florida, Inc., jointly filed a brief in opposition. Florida Energy Freedom, Inc., filed an amicus brief in opposition to which the sponsor responded.
The amendment proposed by Consumers for Smart Solar, Inc., would add the following new section 29 to article X of the Florida Constitution:
Section 29 — Rights of electricity consumers regarding solar energy choice.— (a) ESTABLISHMENT OF CONSTITUTIONAL RIGHT. Electricity consumers have the right to own or lease solar equipment installed on their property to generate electricity for their own use.
(b) RETENTION. OF.' STATE AND LOCAL GOVERNMENTAL ABILITIES. State and local governments shall retain their abilities to protect consumer rights and public health, .safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do. -
(c) DEFINITIONS. For purposes of this section, the following words and terms shall have the following meanings:
(1) “consumer” means any end user of electricity regardless of the source of that electricity.
(2) “solar equipment,” “solar electrical generating equipment” and “solar” are used interchangeably and mean photovoltaic panels and any other device or system that converts sunlight into electricity.’
(8) “backup power” means electricity from an electric utility, made available to solar electricity consumers for their use when their solar electricity generation is insufficient or unavailable, such as at night; during periods of low solar electricity generation- or when their solar equipment otherwise is not functioning.
(4) “lease,” when used in the context of a consumer paying the owner of solar electrical generating equipment for the right to use such equipment, means an agreement under which the consumer pays the equipment owner/lessor a stream of periodic payments for the use of such equipment, which payments do not vary in amount based on the amount of electricity produced by the equipment and used by the consumer/lessee.
(5) “electric grid” means the interconnected electrical network, consisting of power plants and other generating facilities, transformers, transmission lines, distribution lines and related facilities, that makes electricity available to consumers throughout Florida.
(6) “electric utility” means any municipal electric utility, investor-owned electric utility, or rural electric cooperative which owns, maintains, or operates an electric generation, transmission, or distribution system within the state.
(d)EFFECTIVE DATE. This section shall be effective immediately upon voter approval of this amendment.
The ballot title for the proposed amendment is “Rights of Electricity Consumers Regarding Solar Energy Choice.”- The ballot summary for'the proposed amendment states:
*827 'This amendment establishes a right under Florida’s constitution for consumers to own or lease solar equipment installed on their property to generate electricity for their own use. State and local governments shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose, to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.
On November 30, 2015, the Financial Impact Estimating Conference forwarded to the Attorney General the following Financial Impact Statement regarding the initiative petition: “The amendment is not expected to result in an increase or decrease in any revenues or costs to state and local government.”
II. STANDARD OF REVIEW
“This Court has traditionally apr plied a deferential standard of review to the validity of a citizen initiative-petition and ‘has been reluctant to interfere’ with ‘the right of self-determination for all Florida’s citizens’ to formulate ‘their own organic law.’ ” In re Advisory Op. to Att’y Gen. re Use of Marijuana for Certain Med. Conditions (Medical Marijuana I), 132 So.3d 786, 794 (Fla.2014) (quoting Advisory Op. to Att’y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So.2d 491, 494 (Fla.2002)). This Court does “not consider or address the merits or wisdom of the proposed amendment” and must “act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” In re Advisory Op. to Att’y Gen. re Limits or Prevents Barriers to Local Solar Elec. Supply, 177 So.3d 235, 242 (Fla.2015) (quoting In re Advisory Op. to Att’y Gen. re Fairness Initiative Requiring Legis. Determination that Sales Tax Exemptions & Exclusions Serve a Pub. Purpose. (Fairness Initiative), 880 So.2d 630, 633 (Fla.2004)). Accordingly, it is this- Court’s duty to uphold a proposal unless it can be shown to be clearly and conclusively defective. Limits or Prevents Barriers, 177 So.3d at 246; Medical Marijuana I, 132 So.3d at 795.
III. SINGLE-SUBJECT REQUIREMENT
Article XI, section- 3 of the Flori-r da Constitution establishes the general requirement that a proposed citizen initiative amendment “shall embrace but one subject and matter directly connected therewith.” Art. XI,. § 3, Fla. Const. “In evaluating whether a ^proposed amendment violates the single-subject requirement, the Court must determine whether it has a logical and natural oneness of purpose.” In re Advisory Op. to Att’y Gen. re Use of Marijuana for Debilitating Medical Conditions (Medical Marijuana II), 181 So.3d 471, 477 (Fla.2015) (internal citations omitted). The single-subject requirement applies to the citizen, initiative method of amending the Florida Constitution because the citizen initiative process does not afford the same opportunity for public hearing and debate that accompanies other constitutional proposal and drafting processes. See Advisory Op. to the Att’y Gen. re 1.35% Prop. Tax Cap, Unlegs Voter Approved, 2 So.3d 968, 972 (Fla.2009).
The single-subject, rule prevents an "amendment from (1) engaging in “logrolling” or (2) “substantially- altering or performing the functions of- multiple aspects of government.” Advisory Op. to Att’y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 369 (Fla.2000). The term logrolling refers to a practice whereby an amendment is proposed which contains un-. *828 related provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed. Advisory Op. to Att’y Gen. re: Protect People, Especially Youth, from Addiction, Disease, & Other Health Hazards of Using Tobacco, 926 So.2d 1186, 1191 (Fla.2006).
We conclude that the initiative has a logical and natural oneness of purpose. The logical and natural oneness of purpose of the proposed amendment is to establish a constitutional right for electricity consumers “to own or lease solar equipment installed on their property to generate electricity for their own use” while simultaneously ensuring that “State and local governments shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.”
The opponents of the initiative contend that the proposed amendment violates the single-subject requirement by combining three disjointed subjects into one initiative. We disagree. Provision (b) of the proposed amendment is directly related to provision (a). The subparts of this amendment have a natural relation and connection as component parts or aspects of a single dominant plan or scheme. See Advisory Op. to Att’y Gen. re Standards for Establishing Leg. Dist. Boundaries, 2 So.3d 176, 181-82 (Fla.2009).
Combining a constitutional right with the government’s authority to regulate that right represents two sides of the same coin, and we have approved ballot initiatives that similarly have created constitutional rights and allowed the government to regulate the right. See, e.g., Medical Marijuana II, 181 So.3d 471. While the amendment establishes a constitutional right, that right would not be unfettered. Instead, the right would be limited to the extent that State and local governments find necessary to protect consumer rights and public health, safety, and welfare, and to prevent the exercise of the constitutional right from infringing upon the rights of others, specifically, in the form of a subsidy. The components of the amendment are therefore naturally related and connected to the amendment’s oneness of purpose.
The amendment does not engage in impermissible logrolling. It does not involve a popular, desirable provision combined with one that is undesirable, such as asking that solar consumers pay more than their fair share relative to non-solar consumers. Again, the provisions represent two sides of the same coin: individual rights and regulation related to those rights. See State ex rel. Hosack v. Yocum, 136 Fla. 246, 186 So. 448, 451 (1939) (“The fundamental right of a person to pursue a calling cannot be taken away by special legislative enactment, but the same is subject to proper and reasonable police regulations. This reasonable regulation may be imposed within proper limits without invading the fundamental right to engage in a lawful business or occupation.”).
The opponents of the initiative assert that this case involves single-subject violations similar to those in Evans v. Firestone, 457 So.2d 1351 (Fla.1984), and Fairness Initiative, cases in which this Court determined the proposed amendment violated the single-subject requirement of article XI, section 3 of the Florida Constitution. We disagree.
In Evans, the proposed amendment sought to accomplish three things: (1) limit potential payment of damages by a party to a civil action to his or her percentage of liability; (2) require a court to grant summary judgment on the motion of any party *829 when the court finds that no genuine dispute exists concerning material facts of the case; and (3) limit the award of non-economic damages to a maximum of $100,000 against any party. 457 So.2d at 1353". However, this Court determined that the proposed amendment failed the functional test for the single-subject requirement because it substantially performed the function of multiple branches of government. See id. at 1354. This Court also determined that proposed amendment failed the single-subject requirement because ’the summary judgment provision was not “directly connected” to the other two provisions. Id. Unlike the proposed amendment in Evans, the proposed amendment in this case does not substantially perform the function of multiple branches of government. Furthermore, unlike the proposed amendment in Evans, all of the provisions of the proposed amendment in this case are directly connected to each other.
In Fairness Initiative, the proposed amendment “contained] three disparate subjects:. (1) a scheme for the Legislature to review, existing exemptions to the sales tax under chapter 212; (2) the creation of a sales tax on services that currently does not exist; and (3) limitations on the Legislature’s ability to create or continue exemptions and exclusions from the sales tax.” 880 So.2d at 634. This Court reasoned that . (
[wjhile all of these three goals arguably relate to sales taxes, and any one of these three goals might be the permissible subject of a constitutional amendment under the initiative process, we conclude that together they constitute impermissible logrolling and violate the single-subject requirement of article XI, section 3, of the Florida Constitution because of the substantial, yet disparate, impact they may have.
Id. at 635. Unlike the proposed amendment in Fairness Initiative, the proposed amendment in-this case does not contain disparate subjects. Rather, it involves one express right and addresses the related ability of State and local governments to regulate that right.
Additionally, we conclude that the proposed amendment does not substantially alter or perform the functions of multiple branches of government. The opponents of the initiative contend that the proposed amendment violates the single-subject requirement by removing the ability of the State to delegate its regulatory powers to its political subdivisions and prohibiting the State from revoking any powers it delegated to local governments before the adoption of the proposed amendment. However, nothing within the proposed amendment implicitly or explicitly abrogates the power of preemption “retain[edj” by the State under the amendment. As this Court has long recognized, “[wjhile the authority given to cities and counties [and administrative bodies] in Florida is broad, both the constitution and statutes recognize that cities and counties [and-administrative bodies] have no authority to act in areas that the legislature has preempted.” Florida Power Corp. v. Seminole Cty., 579 So.2d 105, 107 (Fla.1991); see, e.g., art. VIII, § 1(f), 1(g), 2(b), Fla. Const.; §§ 125.01, 166.021, Fla. Stat. (2015); City of Cape Coral v. GAC Utilities, Inc., of Florida, 281 So.2d 493, 495-96 (Fla.1973) (“All administrative bodies created by the Legislature are not constitutional bodies, but, rather, simply mere creatures of státuté.... As such, the [Public Service] Commission’s powers, duties and authority are those and only those that are conferred expressly or impliedly by statute of the State.”). Moreover, “the opponents do. not indicate- how this amendment will interfere with or take over the *830 state’s energy policy.” Limits or Prevents Barriers, 177 So.3d at 244.
The proposed amendment would have a possible effect on the operation of the executive and legislative branches, but it does so only in the general sense that any constitutional provision does. The proposed amendment does not require any of the branches, of government to perform any: specific functions. Instead, it maintains the regulatory authority of State and local governments, but limited such that it does not violate the constitutional right that the proposed amendment., seeks to establish. Requiring a branch of the government to comply with a provision of the Florida Constitution does not necessarily constitute the usurpation of the government branch’s function within the meaning of the single-subject requirement. See Protect People, Especially Youth, 926 So.2d at 1192.
As this Court has recognized, “it [is] difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent.” Advisory Op. to Att’y Gen. re Ltd. Casinos, 644 So.2d 71, 74 (Fla.1994). Accordingly, an initiative may affect the government .without substantially altering or performing the functions of multiple- aspects of government. For example, this Court approved an initiative in Medical Marijuana I that would require the Department of Health to “register and regulate centers that produce and distribute marijuana for medical purposes and ... issue identification cards to' patients and caregivers.” 132 So.3d at 794, 796-97. Although the initiative in that case provided new, specific responsibilities for the Department of Health, this' Court determined that the regulatory oversight did not constitute usurpation of a branch of government’s function .within the meaning of the single-subject rule and “the Department of Health would not be empowered under this amendment to make the types of primary policy decisions that are prohibited under the doctrine of nondele-gation of legislative power.” Id. at 797; see also Medical Marijuana II, 181 So.3d at 477-78 (coming to the same conclusion with respect to a similar ballot initiative).
The initiative at issue here simply provides -that State and local governments “shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.” This initiative- does not specify the branches of government affected and does not detail specific functions in the manner that the initiatives in Medical Marijuana I and Medical Marijuana II had. Although the proposed amendment would affect the government in a literal sense by requiring State and local governments to comply with a provision of the Florida Constitution while' retaining their existing abilities, it does hot cause the “precipitous” or “cataclysmic” changes to the government structure indicative of substantially altering or performing the functions of multiple branches of government. See Advisory Op. to Att’y Gen. re Prohibiting State Spending for Experimentation That Involves the Destruction of a Live Human Embryo, 959 So.2d 210, 213 (Fla.2007).
Finally, because the proposed amendment is written-so generally, one might argue that it requires unspecified legislation to be enacted in order to fully effectuate its purpose. However, this Court has rejected similar arguments before because the amendment did not mandate any legislation, and it would be premature to speculate as to how the amendment might interact with other portions of the Florida *831 Constitution even though it' is possible that, if passed, the amendment could have broad ramifications. See, e.g., Leg. Dist. Boundaries, 2 So.3d at 181; Advisory Op. to Att’y Gen. English—the Official Language of Florida, 520 So.2d 11, 12-13 (Fla.1988).
For the reasons set forth above, we hold that the proposed citizen initiative amendment does not violate the single-subject requirement of article XI, section 3 of the Florida Constitution.
IV. BALLOT TITLE AND SUMMARY
Under section 101.161(1), Florida Statutes (2015), “[t]he -ballot • summary of the amendment or other public .measure shall be an explanatory statement, not exceeding 75 words in length,: of the chief purpose of the measure” and “[t]he ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.” Moreover, “a ballot summary of such amendment or other public measure shall be printed in clear and unambiguous language.” § 101.161(1), Fla. Stat.. (2015). The basic purpose of section 101.161 is “to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot.” Advisory Op. to Att’y Gen.—Fee on Everglades Sugar Prod., 681 So.2d 1124, 1127 (Fla.1996). Accordingly, in reviewing the ballot title and summary, this Court asks two questions: (1) whether the ballot title and summary fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the ballot title and summary misleads the public. Prop. Tax Cap, Unless Voter Approved, 2 So.3d at 974-75. “While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment.” Id. at 974.
After careful scrutiny of the text of the ballot title and summary, and "the text of the amendment, and after consideration of all the arguments of counsel, we conclude that the ballot title and summary in this case do not run afoul of these requirements. Without considering the merits of the measure, we find that the title and summary clearly and unambiguously inform the voter that the amendment will establish a constitutional right for electricity consumers “to own or lease solar equipment installed on their property to generate electricity for their own use” while simultaneously retaining the government’s ability to regulate that right. Nei_ ther the ballot title nor the summary misleads the public by suggesting that the amendment is necessary for consumers to be able to own or lease solar equipment installed on their property to generate electricity for their own use. Rather, the ballot title accurately identifies the proposed amendment as creating a framework of “Rights of Electricity Consumers Regarding Solar Energy Choice” and the ballot summary accurately tells the.voter that “[t]his amendment establishes a right under Florida’s eonstitution[,]” not that it allows solar energy use by consumers for the first time. In addition, the ballot summary accurately tells the voter that “State and local governments shall retain their abilities to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are. not required to subsidize the costs of . backup power and electric grid access to those who do.”
The opponents contend that the ballot title and summary mislead the voter by giving the false impression that he or she-must vote for the amendment to maintain *832 a right that already exists under article I, section 2 of the Florida Constitution. We disagree. Nothing within the Florida Constitution currently provides electricity consumers with the specific right “to own or lease solar equipment installed on their property to generate electricity for then-own use.” Although the Florida Constitution provides a general right to “acquire, possess and protect property!,]” this Court has recognized that it does not secure the right to own any specific good or asset. Art. I, § 2, Fla. Const.; see Shriners Hosps. for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla.1990) (recognizing that “even constitutionally protected property rights are not absolute, and ‘are held subject to the fair exercise of the power inherent in the State to promote the general welfare of the people through regulations that are reasonably necessary to secure the health, safety, good order, [and] general welfare.’ ” (quoting Golden v. McCarty, 337 So.2d 388, 390 (Fla.1976))). It follows that nothing within article I, section 2 of the Florida Constitution necessarily precludes the State under its inherent police powers from entirely barring electricity consumers from owning or leasing solar equipment installed on their property to generate electricity for their own use.
It is undeniable that a constitutional right to a specific type of property — by virtue of its enumeration and in the absence of language within the Florida Constitution to the contrary — necessarily receives greater protection than a general constitutional right to property. Compare art. I, § 2, Fla. Const. (establishing a general right to acquire, possess, and protect property), and Haire v. Florida Dept. of Agric. & Consumer Servs., 870 So.2d 774, 783 (Fla.2004) (recognizing that this Court uses the “reasonable relationship test .,. to evaluate statutes and regulations that infringe on property rights”), with art. I, § 8, Fla. Const, (establishing a specific constitutional right to keep and bear arms), and Norman v. State, 159 So.3d 205, 222 (Fla. 4th DCA 2015) (applying a heightened level of scrutiny to a statute implicating the right to keep and bear arms), review granted, 182 So.3d 634 (Fla.2015). Any other conclusion would render the enumeration of a constitutional right to a specific type of property superfluous.
Accordingly, by enshrining a constitutional right “to own or lease solar equipment installed on their property to generate electricity for their own use” in the Florida Constitution, the proposed amendment provides stronger protection for solar energy consumers than previously existed under the Florida Constitution. Although State and local governments retain their abilities under the proposed amendment to protect public health, safety and welfare, the establishment of this specific constitutional right precludes State and local governments from entirely barring electricity consumers from “ownfing] or leasing] solar equipment installed on their property to generate electricity for their own use” under their retained police powers. No language within the proposed amendment indicates otherwise.
The opponents also contend that the proposed amendment is misleading under Evans because the ballot title and summary purport to establish a right that already exists without informing the voter that the amendment elevates an existing right to a constitutional level. We disagree. In Evans, this Court explained as follows:
The summary states that it “establishes” citizen’s rights in civil actions. This is clearly inaccurate as applied to provision b, relating to summary judgment. This provision has long been es *833 tablished in Florida.' The effect of the amendment is to elevate this procedural rule to the status of a constitutional right, protected in the same manner and to the same degree as are other constitutional rights. . We do not pass on the merits of the effect nor do we question the citizens’ right to do exactly this. We do find, however, that the voter must be told clearly and unambiguously that this is what the amendment does.
457 So.2d at 1355. We concluded that the ballot summary in Evans was misleading because it claimed to “establish[ ]” a citizen’s rights in civil actions, thereby implying that it was creating an entirely new right that would not exist otherwise, without disclosing that the provision relating to summary judgment already existed under the Florida Rules of Procedure. In contrast, the ballot summary in this case is not misleading because it explicitly claims to “establish[] a right under Florida’s constitution” and no constitutional provision currently provides electricity consumers with the specific right “to own or lease solar equipment installed on their property to generate electricity for their own use.” Moreover, no statute or rule in Florida currently provides electricity consumers with the specific right “to own or lease solar equipment installed on their property to generate electricity for their own use.” See, e.g., § 163.04, Fla. Stat. (2015) (limiting the power of local governments and homeowner associations to prohibit the installation of “solar collectors, clotheslines, or other energy devices” without addressing the ownership or lease of solar equipment or the use of solar electricity); Fla. Admin. Code R. 25-6.065 (delineating the conditions that a customer must satisfy in order to be eligible for expedited grid interconnection and net-metering without creating a right for consumers to own or lease solar equipment or addressing the installation of solar equipment).
The opponénts assert that the ballot title and summary contain misleading terms, some of which purportedly constitute political or emotional rhetoric. However, when read "within the full context of the ballot title and summary, none of- the terms contained within the ballot title and summary are misleading and none of the terms constitute political or emotional rhetoric. The opponents also claim that the' ballot summary is misleading with respect to the current abilities of State and local governments to regulate the use of solar energy. We disagree. The ballot summary clearly states that both “State and local governments shall retain their' abilities” — whatever they are — “to protect consumer rights and public health, safety and welfare, and to ensure that consumers who do not choose to install solar are not required to subsidize the costs of backup power and electric grid access to those who do.” Additionally, nothing in the proposed amendment requires State or local governments to take any specific action — or adopt any particular policy — regarding their retained abilities. The proposed amendment leaves such decisions to government policymakers.
This Court has long explained that our duty is to uphold the proposal unless it can be shown to be clearly and conclusively defective. Medical Marijuana I, 132 So.3d at 795. The proposal has not been shown to be clearly and conclusively defective in any respect. Accordingly, the ballot title and summary are approved for placement on the ballot.
V. FINANCIAL IMPACT STATEMENT
The proponents' óf the proposed amendment all assert ‘that the Financial Impact Statement complies with section 100.371, Florida Statutes (2015), in their briefs, and the opponents do not contest *834 the validity of the Financial Impact Statement. Nevertheless, this Court has an independent obligation to review the Financial Impact Statement to ensure that it is clear and unambiguous and in compliance with Florida law. See Medical Marijuana. II, 181 So.3d at 479. Article XI, section 5(c) of the Florida Constitution states that “[t]he legislature shall provide by general law, priqr to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the probable financial impact of any amendment proposed by initiative pursuant to section 3” of article XI of the Florida Constitution.
A Financial Impact Statement must estimate the “increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative.” § 100.371(5)(a), Fla. Stat. (2015). The Financial Impact Statement must be “clear and unambiguous” and “no more than .75 words in length[.]” § 100.371(5)(c)2,, Fla. Stat. (2015). Therefore, this Court’s review of the Financial Impact Statement is a narrow analysis of “whether the statement is clear and unambiguous, consists of no more than seventy-five words, and is limited to addressing the estimated increase or decrease in any revenue or costs to state or local governments.” Prop. Tax Cap, Unless Voter Approved, 2 So.3d at 976.
The Financial Impact Statement in this case states that “[t]he amendment is not expected to result in an increase or decrease in any revenues or costs to state and local government.” The Financial Impact Statement is .twenty-two words long, complying with the seventy-five-word limit. It also clearly and unambiguously explains that no change in revenues or costs is expected. Accordingly, we hold that the Financial Impact Statement complies with section 100.371(5), Florida Statutes (2015). See Advisory Op. to Att’y Gen. re. Extending Existing Sales Tax to Non-Taxed Servs. Where Exclusion Fails to Serve Pub. Purpose, 953 So.2d 471, 491 (Fla.2007) (concluding that a proposed Financial Impact Statement stating that “[t]he amendment will not have an impact on state and local government revenues or expenses” did not violate Florida law).
VI. CONCLUSION
For the reasons set forth above, we conclude that the initiative petition and ballot title and summary'meet the legal requirements of article XI,' section 3 of the Florida Constitution, and section 101.161(1), Florida Statutes (2015). Further, the Financial Impact Statement complies with section 100.371(5), Florida Statutes (2015). Therefore, we approve the proposed amendment and Financial Impact Statement for placement on the ballot.
It is so ordered.
LABARGA, C.J., and LEWIS, CANADY, and POLSTON, JJ„ concur.
PARIENTE, J., dissents with an opinion, in which QUINCE and PERRY, JJ., concur.