# Supreme Court of Florida

_____

No. SC16-1785
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: VOTING
RESTORATION AMENDMENT.**

_____

No. SC16-1981
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE: VOTING
RESTORATION AMENDMENT (FIS).**

[April 20, 2017]

LEWIS, J.

The Attorney General of Florida has requested this Court's opinion as to the

validity of an initiative petition circulated pursuant to article XI, section 3 of the

Florida Constitution. We have jurisdiction. <u>See</u> art. IV, § 10, art. V, § 3(b)(10),

Fla. Const.

## FACTS AND BACKGROUND

On October 4, 2016, the Attorney General petitioned this Court for an

advisory opinion as to the validity of an initiative petition sponsored by Floridians

for a Fair Democracy ("the Sponsor") and circulated, pursuant to article XI, section 3 of the Florida Constitution. The Sponsor submitted a brief supporting the validity of the initiative petition.

The full text of the proposed amendment to article VI, section 4 of the Florida Constitution states:

**Article VI, Section 4. Disqualifications.—**

(a) No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability. Except as provided in subsection (b) of this section, any disqualification from voting arising from a felony conviction shall terminate and voting rights shall be restored upon completion of all terms of sentence including parole or probation.

(b) No person convicted of murder or a felony sexual offense shall be qualified to vote until restoration of civil rights.

(bc) No person may appear on the ballot for re-election to any of the following offices:

(1) Florida representative,
(2) Florida senator,
(3) Florida Lieutenant governor,
(4) any office of the Florida cabinet,
(5) U.S. Representative from Florida, or
(6) U.S. Senator from Florida

if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.

The ballot title for the amendment is: "Voter Restoration Amendment." The ballot summary states:

This amendment restores the voting rights of Floridians with felony convictions after they complete all terms of their sentence including parole or probation. The amendment would not apply to those convicted of murder or sexual offenses, who would continue to be permanently barred from voting unless the Governor and Cabinet vote to restore their voting rights on a case by case basis.

On October 28, 2016, the Financial Impact Estimating Conference forwarded to the Attorney General a financial impact statement on the initiative petition. On November 1, 2016, the Attorney General requested this Court's opinion as to whether the financial impact statement prepared by the Financial Impact Estimating Conference on the constitutional amendment is in accordance with section 100.371, Florida Statutes (2016). The financial impact statement regarding the Voter Restoration Amendment states:

> The precise effect of this amendment on state and local government costs cannot be determined, but the operation of current voter registration laws, combined with an increased number of felons registering to vote, will produce higher overall costs relative to the processes in place today. The impact, if any, on state and local government revenues cannot be determined. The fiscal impact of any future legislation that implements a different process cannot be reasonably determined.

No briefs or comments were submitted to this Court in response to the financial impact statement.

## ANALYSIS

### Standard of Review

We have explained the standard of review for citizen initiative petitions as follows:

> "This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and 'has been reluctant to interfere' with 'the right of self-determination for all Florida's citizens' to formulate 'their own organic law.'" In re Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions (Medical Marijuana I), 132 So. 3d 786, 794 (Fla. 2014) (quoting Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses, 818 So. 2d 491, 494 (Fla. 2002)). This Court does "not consider or address the merits or wisdom of the proposed amendment" and must "act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people." In re Advisory Op. to Att'y Gen. re Limits or Prevents Barriers to Local Solar Elec. Supply, 177 So. 3d 235, 242 (Fla. 2015) (quoting In re Advisory Op. to Att'y Gen. re Fairness Initiative Requiring Legis. Determination that Sales Tax Exemptions & Exclusions Serve a Pub. Purpose (Fairness Initiative), 880 So. 2d 630, 633 (Fla. 2004)).

Advisory Op. to Att'y Gen. re Rights of Elec. Consumers Regarding Solar Energy Choice (Solar Energy), 188 So. 3d 822, 827 (Fla. 2016).

> When this Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself satisfies the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary satisfy the clarity requirements of section 101.161, Florida Statutes.

Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions (Medical Marijuana II), 181 So. 3d 471, 476 (Fla. 2015) (quoting Advisory Op. to Att'y Gen. re Water & Land Conservation–Dedicates Funds to Acquire & Restore

Fla. Conservation & Recreation Lands (Water & Land Conservation), 123 So. 3d

47, 50 (Fla. 2013)).  Accordingly, we are obligated to uphold the proposal unless it

is "clearly and conclusively defective."  Advisory Op. to Att'y Gen. re Fla.'s

Amend. to Reduce Class Size, 816 So. 2d 580, 582 (Fla. 2002).

**Single-Subject Requirement**

> Article XI, section 3 of the Florida Constitution establishes the general requirement that a proposed citizen initiative amendment "shall embrace but one subject and matter directly connected therewith."  Art. XI, § 3, Fla. Const.  "In evaluating whether a proposed amendment violates the single-subject requirement, the Court must determine whether it has a logical and natural oneness of purpose."  [Medical Marijuana II], 181 So. 3d 471, 477 (Fla. 2015) (internal citations omitted).  The single-subject requirement applies to the citizen initiative method of amending the Florida Constitution because the citizen initiative process does not afford the same opportunity for public hearing and debate that accompanies other constitutional proposal and drafting processes.  See Advisory Op. to the Att'y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved, 2 So. 3d 968, 972 (Fla. 2009).

> The single-subject rule prevents an amendment from (1) engaging in "logrolling" or (2) "substantially altering or performing the functions of multiple aspects of government."  Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So. 2d 367, 369 (Fla. 2000).  The term logrolling refers to a practice whereby an amendment is proposed which contains unrelated provisions, some of which electors might wish to support, in order to get an otherwise disfavored provision passed.  Advisory Op. to Att'y Gen. re: Protect People, Especially Youth, from Addiction, Disease, & Other Health Hazards of Using Tobacco, 926 So. 2d 1186, 1191 (Fla. 2006).

Solar Energy, 188 So. 3d at 827-28.  This Court has further explained that "[a]

proposal that affects several branches of government will not automatically fail;

rather, it is when a proposal substantially alters or performs the functions of multiple branches that it violates the single-subject test." Advisory Op. to Att'y Gen. re Fish & Wildlife Conservation Comm'n, 705 So. 2d 1351, 1353-54 (Fla. 1998).

Here, the initiative has "a logical and natural oneness of purpose," specifically, whether Floridians wish to include a provision in our state constitution permitting the restoration of voting rights to Floridians with felony convictions, excluding those with murder and felony sex offenses, once they have completed all of the terms of their sentences. The proposed amendment's provision excluding persons with convictions for murder or felony sex offenses is directly connected with this purpose. Furthermore, this exclusion removes a class of offenders from automatic voter restoration eligibility based on the nature of their offenses, thus removing the possibility that voters be forced to "accept part of an initiative proposal which they oppose in order to obtain a change in the constitution which they support." Advisory Op. to Att'y Gen. re Standards for Establishing Legis. Dist. Boundaries, 2 So. 3d 175, 180 (Fla. 2009) (quoting Advisory Op. to Att'y Gen. re Amend. to Bar Gov't From Treating People Differently Based on Race in Pub. Educ., 778 So. 2d 888, 891 (Fla. 2000)). Therefore, the proposed amendment does not engage in impermissible logrolling. See Advisory Op. to Att'y Gen. re Fla. Transp. Initiative for Statewide High Speed Monorail, Fixed Guideway or

Magnetic Levitation System, 769 So. 2d at 369 (holding that "there is no impermissible logrolling" where "[t]he only subject embraced in the proposed amendment is whether the people of this State want to include a provision in their Constitution mandating that the government build a high speed ground transportation system").

Additionally, the proposed amendment does not substantially alter or perform the functions of multiple branches. As it currently stands, the Governor, with the approval of two members of the Florida Cabinet, may restore civil rights on a case-by-case basis. See art. IV, § 8, Fla. Const. If the proposed amendment passes, the Governor and the Florida Cabinet would still review the restoration of civil rights on a case-by-case basis, but only for those persons convicted of murder or felony sexual offenses, rather than for all felony offenders, which would reduce their current obligations in an insignificant way. "[I]t [is] difficult to conceive of a constitutional amendment that would not affect other aspects of government to some extent." Advisory Op. to Att'y Gen. re Ltd. Casinos, 644 So. 2d 71, 74 (Fla. 1994). A proposed amendment having some effect on government does not necessarily result in the substantial alteration or performance of functions of government. See Solar Energy, 188 So. 3d at 830 ("Although the proposed amendment would affect the government in a literal sense by requiring State and local governments to comply with a provision of the Florida Constitution while

retaining their existing abilities, it does not cause the 'precipitous' or 'cataclysmic' changes to the government structure indicative of substantially altering or performing the functions of multiple branches of government."). Therefore, the proposed amendment does not substantially alter or perform the functions of multiple branches of government.

Accordingly, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution.

**Ballot Title and Summary**

Section 101.161(1) provides the following requirements for the ballot title and summary:

> The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of that measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

§ 101.161(1), Fla. Stat. (2016).

> The purpose of these requirements is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." Advisory Op. to Att'y Gen. re Term Limits Pledge, 718 So. 2d 798, 803 (Fla. 1998).

> This Court's review of the validity of a ballot title and summary under section 101.161(1) involves two inquiries:

> > First, the Court asks whether "the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment." Right to Treatment and

- 8 -

> Rehabilitation for Non-Violent Drug Offenses, 818 So.
> 2d [491, 497 (Fla. 2002)]. Second, the Court asks
> "whether the language of the title and summary, as
> written, misleads the public." Advisory Op. to Att'y
> Gen. re Right of Citizens to Choose Health Care
> Providers, 705 So. 2d 563, 566 (Fla. 1998).

Medical Marijuana II, 181 So. 3d at 478 (quoting Advisory Op. to Att'y Gen. re Fairness Initiative Requiring Legis. Determination That Sales Tax Exemptions & Exclusions Serve a Pub. Purpose, 880 So. 2d 630, 635-36 (Fla. 2004)). "While the ballot title and summary must state in clear and unambiguous language the chief purpose of the measure, they need not explain every detail or ramification of the proposed amendment." Solar Energy, 188 So. 3d at 831 (quoting Advisory Op. to Att'y Gen. re 1.35% Prop. Tax Cap, 2 So. 3d 968, 974 (Fla. 2016)).

Here, the ballot title and summary comply with the respective word limitations. The title is three words in length and the summary contains sixty-two words, which is within the word requirements of section 101.161(1).

Thus, the remaining issues are: (1) whether the ballot title and summary inform voters of the chief purpose of the proposed amendment; and (2) whether the ballot title and summary are misleading. We conclude that both issues are satisfied here.

First, the ballot title and summary clearly and unambiguously inform the voters of the chief purpose of the proposed amendment. Read together, the title and summary would reasonably lead voters to understand that the chief purpose of

the amendment is to automatically restore voting rights to felony offenders, except those convicted of murder or felony sexual offenses, upon completion of all terms of their sentence.

Second, the ballot title and summary also do not mislead voters with regard to the actual content of the proposed amendment. Rather, together they recite the language of the amendment almost in full. See Advisory Op. to Att'y Gen. re Funding of Embryonic Stem Cell Res., 959 So. 2d 195 (Fla. 2007) (upholding a summary, which reiterated almost all of the language contained in the amendment); Advisory Op. to Att'y Gen. re Florida Marriage Prot. Amend., 926 So. 2d 1229 (Fla. 2006) (same); Advisory Op. to Att'y Gen. re Medical Liab. Claimant's Comp. Amend., 880 So. 2d 675 (Fla. 2004) (same).

Accordingly, for the reasons expressed above, we conclude that the ballot title and summary comply with the clarity requirements of section 101.161.

**Financial Impact Statement**

We have also detailed our obligation to review financial impact statements:

> We have an independent obligation to review the financial impact statement to ensure that it is clear and unambiguous and in compliance with Florida law. See Adv. Op. to Atty. Gen. re Use of Marijuana for Certain Medical Conditions, 132 So. 3d [786, 809 (Fla. 2014)] (citing Adv. Op. to Atty. Gen. re Referenda Required for Adoption & Amend. of Local Gov't Comprehensive Land Use Plans, 963 So. 2d 210, 214 (Fla. 2007)). Article XI, section 5(c), of the Florida Constitution provides, "The legislature shall provide by general law, prior to the holding of an election pursuant to this section, for the provision of a statement to the public regarding the

- 10 -

probable financial impact of any amendment proposed by initiative pursuant to section 3." Additionally, section 100.371(5)(a), Florida Statutes (2015), provides that the financial impact statement must address "the estimated increase or decrease in any revenues or costs to state or local governments resulting from the proposed initiative." Section 100.371(5)(c) 2, Florida Statutes (2015), requires the financial impact statement to be "clear and unambiguous" and "no more than 75 words in length."[1]

We have explained that our "review of financial impact statements is narrow." Adv. Op. to Att'y Gen. re Water & Land Conservation, 123 So. 3d [47, 52 (Fla. 2013)]. We address only "whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments." Advisory Op. to Att'y Gen. re Local Gov't Comprehensive Land Use Plans, 963 So. 2d [210, 214 (Fla. 2007)].

Medical Marijuana II, 181 So. 3d at 479.

We conclude that the financial impact statement complies with the word limit and meets the other statutory requirements set forth in section 100.371(5), Florida Statutes (2016). The financial impact statement is seventy-four words in length, thus complying with the seventy-five-word limit, and is limited to the subject of the estimated increase or decrease in revenues or costs to state and local governments. Additionally, it clearly and unambiguously states that there are likely increased costs associated with the influx of felons registering to vote, but that the exact amount of cost increase cannot be determined. Moreover, the

---

1. The language of section 100.371(5), Florida Statutes (2016), is identical to the 2015 version quoted in Medical Marijuana II.

financial impact statement clearly and unambiguously explains that the Financial Impact Estimating Conference could not determine the impact on state and local government revenue. Therefore, we conclude that the financial impact statement complies with section 100.371(5). See Advisory Op. to Att'y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens Right to Decide Local Growth Mgmt. Plan Changes, 2 So. 3d 118, 124 (Fla. 2008) ("Overall, the financial impact statement is necessarily indefinite but not unclear or unambiguous."); see also Medical Marijuana II, 181 So. 3d at 479 (holding that the financial impact statement's indeterminate conclusion with regard to the increase or decrease in costs or revenues to state and local government nonetheless complied with section 100.371); Water & Land Conservation, 123 So. 3d at 52 (same); Advisory Op. to Att'y Gen. re Health Hazards of Tobacco, 926 So. 2d 1186, 1195 (Fla. 2006) (same).

**CONCLUSION**

In conclusion, we hold that the proposed amendment meets the legal requirements of article XI, section 3 of the Florida Constitution, and that the ballot title and summary complies with section 101.161(1). Moreover, we conclude that the financial impact statement complies with section 100.371(5). Accordingly, we approve the amendment for placement on the ballot.

It is so ordered.

- 12 -

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

<u>Two Cases</u>:

Original Proceedings – Advisory Opinion – Attorney General

Pamela Jo Bondi, Attorney General, and Ellen B. Gwynn, Senior Assistant Attorney General, Tallahassee, Florida,

     for Petitioner

Jon L. Mills of Boies, Schiller & Flexner LLP, Miami, Florida; and Andrew M. Starling, Orlando Florida,

     for Floridians for a Fair Democracy, Sponsor

Ion Sancho, Former Supervisor of Elections for Leon County, Tallahassee, Florida; and Dr. Brenda Snipes, Supervisor of Elections for Broward County, Fort Lauderdale, Florida,

     as Proponents