# Supreme Court of Florida

_____

No. SC19-328

_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL RE:
RIGHT TO COMPETITIVE ENERGY MARKET FOR CUSTOMERS OF
INVESTOR-OWNED UTILITIES; ALLOWING ENERGY CHOICE**

January 9, 2020

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion as to the validity of a citizen initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution. We have jurisdiction. *See* art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons expressed below, we conclude that the proposed initiative, titled "Right to Competitive Energy Market for Customers of Investor-Owned Utilities; Allowing Energy Choice" ("the Initiative"), should not be placed on the ballot.

## BACKGROUND

On March 1, 2019, the Attorney General petitioned this Court for an opinion as to the validity of the Initiative, which is sponsored by Citizens for Energy Choices and was circulated pursuant to article XI, section 3, of the Florida

Constitution. The Attorney General opposes the Initiative, contending the ballot title and summary fail to adequately inform the voters of "the true meaning and ramifications of the proposed amendment." Twenty-five parties filed briefs opposing the Initiative, either individually or jointly. The Initiative would add the following new section to article X of the Florida Constitution:

(a) POLICY DECLARATION. It is the policy of the State of Florida that its wholesale and retail electricity markets be fully competitive so that electricity customers are afforded meaningful choices among a wide variety of competing electricity providers.

(b) RIGHTS OF ELECTRICITY CUSTOMERS. Effective upon the dates and subject to the conditions and exceptions set forth in subsections (c), (d), and (e), every person or entity that receives electricity service from an investor-owned electric utility (referred to in this section as "electricity customers") has the right to choose their electricity provider, including, but not limited to, selecting from multiple providers in competitive wholesale and retail electricity markets, or by producing electricity themselves or in association with others, and shall not be forced to purchase electricity from one provider. Except as specifically provided for below, nothing in this section shall be construed to limit the right of electricity consumers to buy, sell, trade, or dispose of electricity.

(c) IMPLEMENTATION. By June 1, 2023, the Legislature shall adopt complete and comprehensive legislation to implement this section in a manner fully consistent with its broad purposes and stated terms, which shall take effect no later than June 1, 2025, and which shall:

(1) implement language that entitles electricity customers to purchase competitively priced electricity, including but not limited to provisions that are designed to (i) limit the activity of investor-owned electric utilities to the construction, operation, and repair of electrical transmission and distribution systems, (ii) promote competition in the generation and retail sale of electricity through various means,

- 2 -

including the limitation of market power, (iii) protect against unwarranted service disconnections, unauthorized changes in electric service, and deceptive or unfair practices, (iv) prohibit any granting of either monopolies or exclusive franchises for the generation and sale of electricity, and (v) establish an independent market monitor to ensure the competitiveness of the wholesale and retail electric markets.

(2)  Upon enactment of any law by the Legislature pursuant to this section, all statutes, regulations, or orders which conflict with this section shall be void.

(d)  EXCEPTIONS.  Nothing in this section shall be construed to affect the existing rights or duties of electric cooperatives, municipally-owned electric utilities, or their customers and owners in any way, except that electric cooperatives and municipally-owned electric utilities may freely participate in the competitive wholesale electricity market and may choose, at their discretion, to participate in the competitive retail electricity market.  Nothing in this section shall be construed to invalidate this State's public policies on participants in competitive electricity markets.  Nothing in this section shall be construed to limit or expand the existing authority of this State or any of its political subdivisions to levy and collect taxes, assessments, charges, or fees related to electricity service.

(e)  EXECUTION.  If the Legislature does not adopt complete and comprehensive legislation to implement this section in a manner fully consistent with its broad purposes and stated terms by June 1, 2023, then any Florida citizen shall have standing to seek judicial relief to compel the Legislature to comply with its constitutional duty to enact such legislation under this section.

The ballot title for the proposed amendment, which is limited by law to fifteen words, is stated as "Right to Competitive Energy Market for Customers of Investor-Owned Utilities; Allowing Energy Choice."  The ballot summary, which is limited by law to seventy-five words, states:

Grants customers of investor-owned utilities the right to choose their electricity provider and to generate and sell electricity. Requires the Legislature to adopt laws providing for competitive wholesale and retail markets for electricity generation and supply, and consumer protections, by June 1, 2025, and repeals inconsistent statutes, regulations, and orders. Limits investor-owned utilities to construction, operation, and repair of electrical transmission and distribution systems. Municipal and cooperative utilities may opt into competitive markets.

## STANDARD OF REVIEW

"When this Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself satisfies the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary satisfy the clarity requirements of section 101.161, Florida Statutes." *In re Advisory Op. to Att'y Gen. re Use of Marijuana for Debilitating Med. Conditions*, 181 So. 3d 471, 476 (Fla. 2015) (quoting *Advisory Op. to Att'y Gen. re Land & Water Conservation*, 123 So. 3d 47, 50 (Fla. 2013)). In addressing these two issues, the Court must not address the merits or wisdom of the Initiative. *Advisory Op. to Att'y Gen. re Treating People Differently Based on Race in Pub. Educ.*, 778 So. 2d 888, 891 (Fla. 2000). Further, the Court has a "duty . . . to uphold the proposal unless it can be shown to be 'clearly and conclusively defective.' " *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 795 (Fla. 2014) (quoting *Advisory Op. to*

- 4 -

*Att'y Gen. re Fla.'s Amend. to Reduce Class Size*, 816 So. 2d 580, 582 (Fla. 2002)). "This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and 'has been reluctant to interfere' with 'the right of self-determination for *all* Florida's citizens' to formulate 'their own organic law.' " *Id*. at 794 (quoting *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d 491, 494 (Fla. 2002)).

## ANALYSIS

While the parties have raised a number of issues for this Court's consideration, we address only one issue which is dispositive—that the ballot summary affirmatively misleads voters to believe the Initiative grants a right to sell electricity. The right to sell issue falls under the clarity requirements of section 101.161, Florida Statutes (2019). Section 101.161(1) requires the ballot summary, which is limited to seventy-five words, to describe a proposed amendment to the Florida Constitution "in clear and unambiguous language on the ballot." Moreover, the ballot title, limited to fifteen words, "shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of." *Id*. The purpose of these requirements is "to provide fair notice of the content of the proposed amendment so that the voter will not be misled as to its purpose, and can cast an intelligent and informed ballot." *Advisory Op. to the Att'y*

*Gen. re Voting Restoration Amendment*, 215 So. 3d 1202, 1207 (Fla. 2017) (quoting *Advisory Op. to Att'y Gen. re Term Limits Pledge*, 718 So. 2d 798, 803 (Fla. 1998)); *see also Armstrong v. Harris*, 773 So. 2d 7, 12 (Fla. 2000) (explaining that section 101.161, Florida Statutes, codifies a constitutional "accuracy requirement").

"Ballot language may be clearly and conclusively defective either in an affirmative sense, because it misleads the voters as to the material effects of the amendment, or in a negative sense by failing to inform the voters of those material effects." *Dep't of State v. Florida Greyhound Ass'n, Inc.*, 253 So. 3d 513, 520 (Fla. 2018). Therefore, "the Court must consider two questions: '(1) whether the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and the summary, as written, misleads the public.' " *Fla. Dep't of State v. Slough*, 992 So. 2d 142, 147 (Fla. 2008) (quoting *Advisory Op. to Att'y Gen. re Prohib. State Spending*, 959 So. 2d 210, 213-14 (Fla. 2007)).

Here, we address only the right to sell issue. The ballot summary tells voters that the proposed amendment grants a personal right to "sell electricity," when in fact the amendment does no such thing. The proposed amendment grants several rights, such as (1) the right to purchase electricity from a provider of one's choice, (2) the right to purchase electricity in competitive wholesale and retail markets,

- 6 -

and (3) the right to generate electricity oneself or in combination with others. However, at no point does the Initiative grant a freestanding constitutional right to sell electricity. Instead, it provides that "nothing *in this section* shall be construed *to limit* the right of electricity consumers to buy, sell, trade, or dispose of electricity." (Emphasis added.) The question is not whether a person has the right to sell electricity if the Initiative is adopted, but whether, as the ballot summary claims, the Initiative grants that right. It does not, and the ballot summary is therefore affirmatively misleading.

The Proponents argue that, notwithstanding this discrepancy, the ballot summary is an accurate statement of the Initiative's effects because the Initiative necessarily implies a right to sell electricity. We reject this argument. We do not find any such implicit right in the proposed amendment. The ballot summary expressly states that the Initiative grants the right to sell electricity, and the Initiative does not do so. Because the ballot summary is affirmatively misleading, it does not satisfy the clarity requirements of section 101.161, Florida Statutes. Consequently, the Initiative should not be placed on the ballot.

## CONCLUSION

For the reasons stated, we conclude that the ballot summary is misleading and does not comply with section 101.161(1), Florida Statutes. Accordingly, this Initiative should not be included in the ballot.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceedings – Advisory Opinion – Attorney General

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, and John Guard, Chief Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

W. Christopher Browder, Chief Legal Officer, Orlando, Florida; and Jody Lamar Finklea, General Counsel and Chief Legal Officer, and Daniel B. O'Hagan, Assistant General Counsel & Regulatory Compliance Counsel, Tallahassee, Florida,

    for Orlando Utilities Commission and Florida Municipal Electric
    Association, Inc. and Florida Municipal Power Agency

Jason Gonzalez of Shutts & Bowen LLP, Tallahassee, Florida, and Bryan A. Garner of Garner & Garner LLP, Dallas, Texas,

    for Tampa Electric Company and Duke Energy Florida, LLC

Rachael M. Crews and Thomas A. Cloud of GrayRobinson, P.A., Orlando, Florida,

    for Florida League of Cities, Inc., Florida Association of Counties, Inc.,
    Florida Sheriffs Association, and Florida Police Benevolent Association

Raoul G. Cantero, David P. Draigh, and Zachary B. Dickens of White & Case LLP, Miami, Florida,

    for the Florida Chamber of Commerce and the Florida Economic
    Development Council

Virginia C. Dailey of Panza, Maurer & Maynard, P.A., Tallahassee, Florida, and Jonathan Barton Golden of Panza, Maurer & Maynard, P.A., Fort Lauderdale, Florida,

> for Audubon Florida, and The Nature Conservancy, Florida Program

Keith C. Hetrick, General Counsel, Samantha M. Cibula, Attorney Supervisor, and Andrew B. King, Senior Attorney, Tallahassee, Florida,

> for Florida Public Service Commission

Alain E. Boileau, City Attorney, Fort Lauderdale, Florida; Mark E. Berman, City Attorney, Pompano Beach, Florida; Douglas R. Gonzales, City Attorney, Hollywood, Florida; and John C. Rayson, Town Attorney, Davie, Florida,

> for City of Fort Lauderdale, City of Hollywood, City of Pompano Beach and Town of Davie

Glen J. Torcivia of Torcivia, Donlon, Goddeau & Ansay, P.A., West Palm Beach, Florida; Wade C. Vose of Vose Law Firm, LLP, Winter Park, Florida; Kathryn Michelle Blakenship Jordan of Blakenship Jordan, Chipley, Florida; and Donia Roberts of Donia Adams Roberts, P.A., Belle Glade, Florida,

> for City of Belle Glade, Village of Indiantown, Cities of Chipley and Vernon, and Lake Okeechobee Regional Alliance of Palm Beach County, Inc.

Daniel Nordby, Benjamin Gibson, and Amber Stoner Nunnally of Shutts & Bowen, LLP, Tallahassee, Florida,

> for Associated Industries of Florida, Florida Health Care Association, and Florida Hospital Association

Glenn Burhans, Jr., of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tallahassee, Florida,

> for Partnership for Affordable Clean Energy a/k/a Energy Fairness

Barry Richard of Greenberg Traurig, P.A., Tallahassee, Florida,

> for Florida Power & Light Company and Gulf Power Company

William N. Spicola, Tallahassee, Florida,

> for American Senior Alliance

Gregory T. Stewart, Heather J. Encinosa, and Evan J. Rosenthal of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida,

> for JEA

Kenneth W. Sukhia of Sukhia & Williams Law PLLC, Tallahassee, Florida,

> for Citizens for Energy Choices

George N. Meros, Jr., D. Bruce May, Jr., and Tara R. Price of Holland & Knight, LLP, Tallahassee, Florida; and Michelle L. Hershel of Florida Electric Cooperatives Association, Inc., Tallahassee, Florida,

> for The Florida Electric Cooperatives Association, Inc.

Matthew J. Conigliaro of Carlton Fields, P.A., Tampa, Florida,

> for Florida Association of Realtors, Inc. d/b/a Florida Realtors

Jeremiah Hawkes, General Counsel, and Ashley Istler, Deputy General Counsel, Tallahassee, Florida,

> for The Florida Senate; and Bill Galvano, in his official capacity as President of the Florida Senate

Daniel Bell, General Counsel, and J. Michael Maida, Deputy General Counsel, Tallahassee, Florida,

> for Florida House of Representatives

M. Stephen Turner of Nelson Mullins Broad and Cassel, Tallahassee, Florida,

for Floridians for Affordable Reliable Energy (FARE), Urban League of Palm Beach County, Jacksonville Urban League, and the Central Florida Urban League

Kenneth W. Sukhia of Sukhia & Williams Law, PLLC, Tallahassee, Florida,

for Citizens for Energy Choices

Warren Rhea, Corporate Counsel, Infinite Energy, Inc., Gainesville, Florida,

for Infinite Energy, Inc., NRG Energy, Inc., Vistra Energy Corporation, National Energy Marketers Association, and Energy Choice Coalition